UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------- X
                                      :
UNITED STATES OF AMERICA,             :
                                      :
                v.                    :      No. 17 Cr. 683 (LAP)
                                      :
CHUCK CONNORS PERSON                  :
and RASHAN MICHEL,                    :
                                      :
                         Defendants.  :
------------------------------------- X


**DEFENDANT RASHAN MICHEL'S REPLY MEMORANDUM
IN FURTHER SUPPORT OF HIS MOTION TO DISMISS THE INDICTMENT**

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ...............................................................................................................1

I.   Section 666 Is Unconstitutionally Vague And Overbroad As Applied In This Case ..........2

    A.   Contrary to *McDonnell*, The Government Relies On An Unprecedented, Sweeping, And Standardless Interpretation Of Section 666 ...................................2

    B.   The Holding In *United States v Percocco* Does Not Address Or Defeat Michel's Constitutional Arguments ..........................................................................6

II.  The § 666 Counts Should Be Dismissed For Failure To Allege Violation of a "Duty Owed To The Government Or Public At Large" ......................................................10

III. The Honest Services Counts Should Be Dismissed ............................................................11

IV.  The Travel Act Count Should Be Dismissed ......................................................................15

CONCLUSION ....................................................................................................................15

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Salinas v. United States*,
    522 U.S. 52 (1977)..................................................................................................5

*United States v. Brunshtein*,
    344 F.3d 91 (2d Cir. 2003)....................................................................................10

*United States v. Crozier*,
    987 F.2d 893 (2d Cir. 1993)..................................................................................10

*United States v. Marmolejo*,
    89 F.3d 1185 (5th Cir. 1996) ..................................................................................6

*United States v. McDonnell*,
    136 S. Ct. 2355 (2016).................................................................................. *passim*

*United States v Nouri*,
    711 F.3d 129 (2d Cir. 2013)..................................................................................14

*United States v. Percoco*,
    2017 WL 6314146 (S.D.N.Y. Dec. 11, 2017) ....................................................7, 8

*United States v. Robinson*,
    663 F.3d 265 (7th Cir. 2011) ..................................................................................6

*United States v. Rooney*,
    37 F.3d 847 (2d Cir. 1994)..............................................................................10, 11

*United States v. Rosen*,
    716 F.3d 691 (2d Cir. 2013)..................................................................................10

*United States v. Rybicki*,
    354 F.3d 124 (2d Cir. 2003)............................................................................12, 13

*United States v. Smith*,
    985 F.Supp. 2d 547 (S.D.N.Y. 2014)......................................................................9

*United States v. Townsend*,
    630 F.3d 1003 (11th Cir. 2011) ..............................................................................6

*United States v. Urlacher*,
    979 F.2d 935 (2d Cir. 1992)..................................................................................10

**Statutes**

18 U.S.C. § 1952..................................................................................................................15

**Other Authorities**

Rule 11.1.3 ..........................................................................................................................4

iii

## INTRODUCTION

The government's opposition confirms that it is pursuing an ambitious and creative theory of prosecution in an attempt to turn purported rule violations into federal crimes.  In response to defense arguments, the government has already abandoned the wire fraud theory set forth in its original indictment, dropping in its entirety the wire fraud conspiracy count formerly charged against defendant Michel.  (*See* Superseding Indictment, S1 17 Cr. 683, ECF No. 71.) To maintain its remaining counts, the government must ignore the dictates of *United States v. McDonnell,* 136 S. Ct. 2355 (2016), and write as if *McDonnell's* authoritative treatment of the constitutional limits of federal *quid pro quo* bribery is of no consequence to the interpretation of the federal funds bribery statute at issue here.

Moreover, the government writes as if any payment to an employee that causes a dereliction of duty constitutes "a bribe."  To constitute a bribe, a payment must be intended to do more than simply influence an employee to break a rule or cross a line:  it must be intended to influence the conduct or decision-making of the employee's employer.  Indeed, a payment may be said to corrupt only when it is made to influence an official act of the employee:  that is, an act that the employee, by virtue of his office, is expected to perform on behalf of his employer. Here, the government has alleged a scheme in which payments were made, not to influence any underlying business or transaction that Michel had with associate coach Person's employer, nor to influence Person in connection with any official act he was expected to perform on his employer's behalf, but only to influence third parties (student athletes) in their future dealings with other third parties (a financial advisor and a clothing provider) outside of Auburn University and outside of the NCAA.  The indictment should be dismissed.

1

I.     **Section 666 Is Unconstitutionally Vague And Overbroad As Applied In This Case**

   A.     **Contrary to *McDonnell*, The Government Relies On An Unprecedented, Sweeping, And Standardless Interpretation Of Section 666**

In *McDonnell*, the Supreme Court made clear that federal laws prohibiting bribery violate due process to the extent they are couched in broad, generic terms that fail to provide fair notice of what conduct is or is not proscribed.  Michel's opening brief focused on the vagueness and virtually unlimited breadth of terms such as "in connection with any business, transaction, [or] series of transactions" included in § 666's definition of bribery.  (*See* Defendant Michel's Memorandum of Law In Support Of His Motion To Dismiss The Indictment ("Michel Br.") at 10-25.)  The use of such general terms creates a potential universe of criminal liability far broader and vaguer than that which the Supreme Court sought to constrain by limiting the definition of "official act" in *McDonnell*.  The terms "business" and "transaction" can be applied to "nearly anything" (136 S. Ct. at 2372) and thus raise the same issues of fair notice and discriminatory enforcement that led the Supreme Court to reverse the defendant's conviction in *McDonnell*.

The government does not deny that the Supreme Court put these constitutional concerns at the front and center of federal bribery jurisprudence.  Instead, it notes that rather than declaring a federal bribery statute unconstitutional, the Supreme Court provided a limiting instruction to limit the meaning and application of the statute's broad terms and thereby bring them within constitutional bounds.  While the government proposes a similar approach here, the government is conspicuously silent about what any proposed limiting instruction might actually say. (Govt. Br. at 19-20.)  If a limiting instruction narrowed the definition of "business" or "transaction" to something concrete, such as a specific act or decision pending before a federally funded organization – much as *McDonnell* narrowed the definition of "official act" in a related

statute – then none of the indictment's § 666 charges or related honest services fraud charges could survive a motion to dismiss, as the indictment nowhere identifies any act or decision of Auburn University that Michel sought to influence. Instead, the government at most alleges that Michel sought to influence an employee of Auburn, associate coach Person, to bend the university's rules. In any event, the government's proposal of a limiting instruction, devoid of any proposed content, makes it impossible for defendant Michel to know what legal standard will actually be applied in this case and thus impossible for him to prepare a defense.

The government also appears to be employing a loose and overbroad interpretation of the phrase "in connection with." Section 666, by its terms, criminalizes any payment made "with the intent to influence" an employee of a federally funded organization "<u>in connection with</u> any business, transaction or series of transactions <u>of</u> <u>such</u> <u>organization</u>." *Id*. (emphasis added). The government argues that the statute is satisfied whenever an employee is influenced in a manner that "affects" the organization or some general business in which the organization is engaged. (Govt. Br. at 16.) This reads out of the statute any requirement that the defendant actually intend to exert influence over the organization or over an official act that the employee is expected to perform on behalf of the organization. There is a difference between actions that merely have an effect on an organization and actions intended to influence the organization in a decision or action, and that difference is key in understanding the dividing line between certain conduct and bribery.

Specifically, the government contends in its brief that Auburn University is "in the business of running an NCAA compliant athletics program" and that associate coach Person was influenced "in connection with" that overall business, because his conduct purportedly "affected Auburn's ability to run a NCAA compliant program." (Govt. Br. at 16.) In response to requests

3

for further particulars, the government reiterated that Person "is alleged to have accepted bribery payments to influence his conduct with respect to the business of Auburn University – namely with respect to the conduct of Auburn University's basketball program – and the performance of his duties as an associate coach at Auburn University."  (Govt. Letter, July 13, 2018.)

If conduct affecting Auburn's "business" of running an NCAA-compliant basketball program is sufficient to give rise to criminal liability under § 666, then so would any run-of-the-mill breach of any public employee's contract.  Every federally funded organization can be said to be "in the business" of running its affairs, and any employee's breach of a duty owed to the employer could therefore be said to "affect" or be "with respect to" the organization's "business."  So understood, the statute is not only extraordinarily broad in its reach, but also contradicts the ordinary understanding of bribery and official corruption, confusing mere employee disloyalty and breach of contract with the corruption of the institutional integrity of an organization.  Bribery is at base an attempt to exert influence over the course of conduct of an organization, not merely an attempt to cause an employee to bend the rules when no particular organizational business or transaction is at issue.

For example, section 11.1.3 of the NCAA's Division 1 Rules prohibits staff members of an athletics institution from "receiving compensation for arranging commercial endorsements or personal appearances for former student-athletes."[1]  (NCAA Division I Manual 11.1.3.)  If an Auburn coach accepted payment for arranging for a former student athlete to give away Thanksgiving turkeys at a local store in violation of Rule 11.1.3, his conduct would have "affected" Auburn's ability to run a rule-compliant program and would therefore potentially

---

[1]  Athletics staff like Mr. Person are not members of the NCAA and thus are not subject to its rules, which are purely contractual in nature.  A coach's breach of an NCAA rule is at most a breach of the employment contract between the coach and the NCAA member institution that employs the coach.

4

subject the university to NCAA sanctions. But the ordinary person would think it ridiculous to characterize that conduct as influencing or corrupting the integrity of Auburn University. The conduct is not "bribery," as that term is ordinarily understood, because even if it may have a collateral effect on the University's compliance with NCAA Rules, it is not intended to influence *the University* in any decision or action. The facts alleged in the indictment are no different. As applied by the government here, the statute purportedly criminalizes the payment of a benefit with the intent to influence a university employee (Coach Person) to influence independent third-parties (the players) in their dealings with other independent third-parties (financial advisors). There is no allegation that Michel intended to influence Auburn University to do anything at all.

The government's broad construction of § 666 is also unsupported by any precedent of which we are aware. In support of its contention that courts have "broadly construed the terms 'business' and "transaction'" in § 666, the government relies on *Salinas v. United States*, 522 U.S. 52, 57 (1977). (Govt. Br. at 12.) Such reliance is misplaced. Contrary to the government's reading, *Salinas* does not stand for the proposition that "any" business or transaction broadly construed falls within the ambit of § 666. Rather, *Salinas* stands solely for the far more limited proposition that the particular business or transaction in question need not involve the use of federal funds, so long as the organization in question is a recipient of federal funds. 522 U.S. at 56-57. *Salinas* nowhere cautions against adopting a narrowing construction of the terms "business" and "transaction" so that they can be interpreted and applied in way that avoids vagueness and is consistent with constitutional standards. Indeed, *McDonnell* teaches that the terms of federal bribery statutes must be narrowly construed (136 S. Ct. at 1372), and to the extent that *Salinas* teaches anything to the contrary, it is no longer good law.

5

The government also cites a number of cases that stand for the unremarkable proposition that the term "business" can refer to "business or transactions in intangibles," such as freedom from arrest or changes in jail conditions, and not just to transactions in "money, goods, or services." (Govt. Br. at 12.) *See United States v. Robinson*, 663 F.3d 265, 273-74 (7th Cir. 2011) (bribes paid to police officer with the intent of diverting police activity away from drug operation); *United States v. Townsend,* 630 F.3d 1003, 1011 (11th Cir. 2011) (bribes paid to corrections officer with the intent of influencing conditions of pretrial detention); *United States v. Marmolejo*, 89 F.3d 1185, 1191-93 (5th Cir. 1996) (bribes paid to sheriff and his 'deputy with the intent of influencing conditions of confinement). These cases simply hold that the meaning of "business" and "transactions" is not limited to commercial activity. As *Robinson* itself observes, these cases are consistent with numerous other cases holding that bribes to influence "intangible" legislative or administrative business are within the scope of § 666. 663 F.3d at 274 (collecting cases). But none of the cases the government cites touch on the question presented here: whether § 666 may be applied to payments that were intended to influence an employee to influence independent third parties in dealings with other independent third parties, without any attempt to influence an act or decision of the employee's employer. For Michel, the issue is not whether the alleged object of the intent to influence is somehow intangible or lacks clear monetary value. The issue is whether an ordinary person would understand the alleged payments to associate coach Person as an effort to influence any business or transaction of Auburn University.

    **B.**    **The Holding In *United States v Percocco* Does Not Address Or Defeat Michel's Constitutional Arguments**

The government does not deny that § 666's broad terms raise the same constitutional concerns that the Supreme Court addressed in *McDonnell*. Nor does the government deny that

its interpretation of § 666 would criminalize virtually any violation of NCAA rules by an employee of a university that receives federal funds.  Instead, the government appears to rest its position largely on *United States v. Percoco*, 2017 WL 6314146, at *4 (S.D.N.Y. Dec. 11, 2017), a classic public corruption case in which third parties sought to influence the government's award of contracts and other benefits.  (Govt. Br. at 19.)  *Percoco* is unpersuasive authority here for three reasons:

*First, Percoco* focuses on the narrow question of whether a bribery statute must contain a § 201 official act element in order to be constitutional.  *Percoco*, 2017 WL 6314146,at *2 (defendants claim that *McDonnell* "implicitly require[s] all federal bribery statutes to contain an 'official act' element"), *3 (reasoning *McDonnell* did not state or imply that a bribery statute is "*required* to have" an "such an element" in order "to be constitutional").  Whatever arguments the *Percoco* defendants may have advanced, Michel does not argue that § 666 must necessarily contain an element identical to a § 201 official act.  Rather, Michel argues that, under *McDonnell*, bribery statutes violate due process to the extent they include vague and broad terms that result in a "standardless sweep," such that an ordinary person lacks fair notice of what may be criminally prosecuted.  136 S. Ct. at 2373.  The government's brief, like *Percoco* itself, simply fails to join issue with Michel's argument.

*Second, Percoco* misreads the Second Circuit's decision in *United States v. Boyland* to hold that "*McDonnell* does not reach the federal funds bribery statute."  *See Percoco*, 2017 WL 6314146, at *4.  As we explained in our opening brief (Br. at 20, n. 7), Boyland's appeal did not raise any constitutional challenge with respect to § 666.  Nor did the government raise any constitutional arguments or issues in briefing the appeal.  *See* Suppl. Brs. for Pet'r, Doc. Nos. 74, 96, Boyland, No. 15-3118 (2d Cir. 2017); Govt. Br. at 34 n.15, Doc. No. 91, Boyland, No. 15-

3118 (2d Cir. Nov. 9, 2016) ("[T]he government will not address [the constitutional] argument[.] . . . Boyland did not raise this argument in his supplemental brief.")  Accordingly, *Boyland*'s statement that "we do not see that the *McDonnell* standard applies to these [§ 666] counts" must be understood in a context in which no party argued for or against a constitutionally required narrowing of § 666.  862 F.3d 279, 291 (2d Cir. 2017).  The Second Circuit has never addressed the issue upon full briefing.  Indeed, it is notable that while *Percoco* leans heavily on *Boyland*, the government has confined its own discussion of *Boyland* to a footnote in its brief (Govt. Br. at 20 n. 5), apparently recognizing the weakness of *Boyland*'s purported authority.

*Third*, unlike the present case, *Percoco*'s facts fall squarely within the heartland of § 666 and related federal bribery prosecutions.  Corruption in government contracting is the paradigmatic example of federal funds bribery.  Michel's case, in contrast, arises from an unprecedented application of the statute, lying at its outermost margins, and presenting clear questions of fair notice and discriminatory enforcement as discussed in our opening brief.  The circumstances of this case fairly prompt an examination of permissible constitutional limits.

Beyond its heavy reliance on *Percoco*, the government's opposition barely mounts a substantive response to Michel's constitutional arguments.  The government claims that Michel's as applied challenge to the statue "is not an issue that can be resolved on a motion to dismiss," ostensibly because it rests "on assertions about what the facts at trial will show." (Govt. Br. at 20.)  To the contrary, the government has filed two factually detailed indictments based on information provided by an informant and countless hours of taped conversations.  Its factual theory is unequivocally clear.  It contends that payments to associate coach Person to obtain his help in influencing students to retain the services of a financial advisor and a tailor violated § 666, because such payments "affected" Auburn University's purported business of running "an

NCAA-compliant basketball program." There is no practical impediment to deciding now that the statute is vague as applied to such allegations. *See United States v. Smith*, 985 F.Supp. 2d 547 (S.D.N.Y. 2014) (deciding as applied vagueness challenge to the fiduciary duty element of honest services charges on pre-trial motion to dismiss). We see no prospect that the government's theory on the issue could evolve in any way at trial. But if we are wrong, the government should disclose its alternate theory now. The charges set forth on the face of this indictment are unconstitutionally vague as applied.

The government also appears to argue that any payments intended to influence an employee contrary to the best interests of the employer are "bribes" and, as such, are plainly prohibited by the statute, rendering any constitutional analysis unnecessary. (Govt. Br. at 20 (quoting *Skilling* for proposition that it is "'plain as a pikestaff that bribes and kickbacks' are prohibited" and arguing that the element of specific intent mitigates problems of fair notice).) *McDonnell* is, of course, to the contrary. There, the Supreme Court devoted pages of legal analysis to explaining why, without a sufficient narrowing construction, § 201's definition of a bribe fails to provide fair notice and is an invitation to discriminatory enforcement. After *McDonnell*, it is anything but "plain" that the offer of money or other benefits with the intent to influence rises to the level of a prohibited "bribe." Indeed, *McDonnell* reversed a conviction in which there was overwhelming evidence that inappropriate payments had been made to influence a high-ranking government official.

For the same reason, the pre-*McDonnell* cases the government cites as rejecting vagueness challenges to § 666's bribery provisions are no longer good law. (Govt. Br. at 20-21.) Apart from the fact that *McDonnell* has since transformed the relevant legal landscape, the government's pre-*McDonnell* cases are all classic public corruption cases in the heartland of §

9

666 and, on their face, raise none of the unique as applied vagueness issues presented by the government's unprecedented application of § 666 in this case.[2]  Under any fair reading of *McDonnell*, the indictment's § 666 counts must be dismissed.

II.     **The § 666 Counts Should Be Dismissed For Failure To Allege Violation of a "Duty Owed To The Government Or Public At Large"**

Citing *United States v. Rooney*, 37 F.3d 847, 854 (2d Cir. 1994), Michel argued in his opening brief that the § 666 counts must be dismissed for the additional reason that they fail to allege that associate coach Person acted "corruptly" within the meaning of the statute – that is, in violation of an "official or public duty owed to the government or the public at large."  (Michel Br. at 26-27.)  In its opposition, the government takes issue with Michel's reading of *Rooney:* the government argues that*,* under *Rooney,* an agent or official acts corruptly whenever he or she violates a duty, regardless of whether the duty is merely a private duty or one owed to the government or public at large.  (Govt. Br. at 17-18.)[3]

Contrary to the government's position, the holding of *Rooney* is expressly stated as follows: "Rooney's conduct in this case cannot be considered 'corrupt because he violated *no official or public duty owed to the government or the public at large*."  37 F.3d at 852 (emphasis

---

[2]  *See United States v. Rosen*, 716 F.3d 691 (2d Cir. 2013) (bribes and kickbacks to New York State Assembly Member to obtain assistance before legislature and state agencies); *United States v. Brunshtein*, 344 F.3d 91 (2d Cir. 2003) (bribes to New York City tax official to eliminate real estate taxes); *United States v. Crozier,* 987 F.2d 893 (2d Cir. 1993) (bribery of a member of the Albany County Industrial Development Agency which oversaw public construction project). We note that *United States v. Urlacher*, 979 F.2d 935 (2d Cir. 1992), also cited on this point in the government's brief, concerns the embezzlement provisions of § 666(1)(A) and a vagueness challenge to the terms "intentionally misapply," not a challenge to § 666's bribery provisions.

[3]  The government quotes selectively from *Rooney* in support of its position, claiming that "[t]he Second Circuit reversed the defendant's conviction on the grounds that his solicitation of the general contractor 'cannot be considered "corrupt" because he violated no duty.'"  (Govt. Br. at 17 (quoting the court's statement of Rooney's position at 37 F.3d at 852).)

10

added). Indeed, the *Rooney* court states this public duty requirement multiple times, describing it as a "test" for § 666 liability. *Id*. at 852-54.

As Michel argued in his opening brief, the only duties alleged in this case are purely private contractual duties and thus not within the reach of § 666. (Michel Br. at 26-27.) Indeed, the only source of any duty alleged in the indictment, or identified in the government's brief, is associate coach Person's private employment contract with Auburn University, which generally required Person to comply with NCAA Rules – rules which are themselves the purely private product of Auburn's private contractual arrangements with other NCAA-member institutions. (*See* Govt Br. at 16 (observing that Person violated "a duty owed to Auburn to follow the NCAA rules").) Associate coach Person does not owe any "official or public duty" to the federal government, to the government of Alabama, or to "the public at large" to refrain from violating the rules of the NCAA. Nor is his alleged violation of NCAA rules in any sense an abuse of "the public trust." *Rooney*, 37 F.3d at 853. He simply owes a private contractual duty to Auburn University, as does any professor or university employee.

Significantly, the government never once argues that Person's alleged conduct violated "an official or public duty owed to the government or public at large." Here, as in *Rooney*, if Person had violated a duty in connection with some responsibility for "parceling out government benefits" on behalf of the state or the federal government, his conduct might fall within the scope of § 666. (*See* Govt. Br. at 18 (quoting *Rooney,* 37 F.3d at 853.) But, under *Rooney*, Section 666's bribery provisions do not concern themselves with the breach of private duty at issue in this case. Accordingly, the Section 666 counts should be dismissed.

### III. The Honest Services Counts Should Be Dismissed

As Michel observed in his opening brief, the indictment's honest service fraud counts largely replicate and suffer from the same constitutional infirmities as the indictment's § 666

counts. The indictment's honest service fraud counts also fall outside the core of pre-*McNally* bribery and kickback cases as authoritatively set forth in *United States v. Rybicki*, 354 F.3d 124, 138-40 (2d Cir. 2003). (Michel Br. at 28-29.).

In *Rybicki*, the Second Circuit, sitting en banc to resolve due process vagueness challenges to the honest services fraud statute, defined the core of pre-*McNally* bribery and kickback cases as follows:

> In the bribery or kickback cases, a defendant who has or seeks some sort of business relationship or transaction with the victim secretly pays the victim's employee (or causes such a payment to be made) in exchange for favored treatment.

354 F.3d at 139. In its opposition, the government does not even attempt to argue that the present case falls within this definition. As is clear from the face of the indictment, this is not a case in which Michel had or sought some sort of business relationship or transaction with the victim (Auburn University): none of the alleged payments to associate coach Person were made to influence a decision or act of Auburn University, nor were they made to influence Person with respect to any proposed business of the university. Rather, in response to *Rybicki's* clear and authoritative distillation of relevant *pre-McNally* case law, the government is reduced to asserting that *Rybicki's* formulation is simply not dispositive or sufficiently expansive. (Govt Br. at 26.)

While the government faults Michel for failing to cite any post-*Skilling* case law that expressly embraces *Rybicki's* formulation as a requirement of an honest services bribery or kickback scheme (Govt. *Br*. at 26), it is even more telling that the government has failed to cite a single bribery or kickback case outside of this paradigm – that is, one in which the defendant's payments were *not* intended to influence the victim through its agent, or the employer through its employee. (*Id.*) A criminal prosecution should not be based on a gray area outside the

traditional bounds of prohibited activity.  In substance, *Rybicki*'s account of the scope of the bribery and kickback cases embodies a limitation on honest services fraud:  it limits the scope of such crimes to instances of payments that undertake to influence a business relationship or transaction with the employer, including official acts undertaken by the employee on the employer's behalf.  It does not expand honest services fraud to include every instance in which a payment may result in employee disloyalty.

Of course, when *Rybicki* was decided, the honest services doctrine was *not* confined to bribery or kickback conduct as it is today.  At that time, honest services fraud also included other species of fraud, such as misrepresentations or omissions, in which there was no kickback or bribe.  It is therefore hardly surprising that the Second Circuit did not include specific statements about bribery when setting forth the general elements of honest services fraud.  Nevertheless, in defining the elements of honest services fraud, the Second Circuit emphasized that the scheme must involve a person "purporting to act for or in the interest of his or her employer," accompanied by false statements or omissions which could be considered material only if they had the "natural tendency to influence or [be] capable of influencing the employer to change its behavior." *Rybicki*, 354 F.3d at 145, 147.  In other words, the gravamen of honest services fraud, as set forth in *Rybicki*, turns on whether the fraud was intended to exert influence over the employer and not merely on whether an employee violated a duty.  *Rybicki* remains the authoritative statement on the scope of pre-*McNally* bribery and kickback law and thus, under *Skilling*, is authoritative as to the scope of honest services fraud.  (Michel Br. at 28.)  Expanding the scope of honest-services fraud beyond the core conduct recognized in pre-*McNally* bribery and kickback cases, as the government seeks to do here, is supported by no precedent and raises constitutional vagueness concerns.

13

The government also appears to misunderstand Michel's argument with respect to NCAA rules and fiduciary duties. (Govt. Br. at 14.) In his opening brief, Michel argued that Person was not acting in any official capacity when he allegedly spoke with student-athletes about engaging a financial advisor to serve them during their contemplated professional careers. (Michel Br. at 31.) While the government claims that Person used his "official position" as a coach to steer students to a financial advisor, the key point is that Person's position as a coach did not provide him with any authority over those decisions of the students. The concept of "fiduciary duty" is notoriously vague and malleable and has, as a result, been a long-standing source of controversy in the law of honest services fraud. *See generally*, *Skilling*, 561 U.S. 358, 417 (Scalia, J. concurring) (discussing the vagueness of the fiduciary duty concept in honest services law).

We do not dispute that employees are generally held to have fiduciary duties of loyalty to their employers, or that contracts and employer rules can be relevant evidence of the scope of such duties. But a breach of such duty becomes relevant for purposes of an honest services fraud prosecution only when a bribe or a kickback influences an official act the employee is expected to perform on behalf of his employer. Thus, the government's lengthy recitation of the decision in *United States v Nouri*, 711 F.3d 129 (2d Cir. 2013), is beside the point. (Govt. Br. at 27-28.) In *Nouri*, the stock brokerage employees were plainly engaged in official acts on behalf of their employer. They were acting in their employer's name to trade stocks for customers in a manner that had been corrupted by payments from a third party. Here, in contrast, the mere breach of an employment contract requiring a coach to comply with NCAA rules does not, in itself, rise to the level of an official act. (See Point I *supra*, discussing Thanksgiving promotions.) The government's more expansive understanding of honest services fraud, untethered to any official

act of the employee or to any attempt to influence a decision or act of the employer, would be unsound under *McDonnell* and under the due process clause.

### IV.     The Travel Act Count Should Be Dismissed

In Point V of his opening brief, Michel argued that the indictment's Travel Act count, predicated on the alleged violation of a misdemeanor Alabama bribery statute, is unconstitutionally vague for the same reasons set forth with respect to the § 666 and honest services counts.  In response, the government points to decisions that, it contends, reject similar vagueness challenges to similar Travel Act bribery prosecutions.  (Govt. Br. at 33.)  All of government's cases, however, were decided before *McDonnell* changed the landscape of bribery law, prohibiting a sweeping and standardless definition of bribery that would apply to "nearly anything" done in return for a benefit.  The pre-*McDonnell* cases the government cites do not join issue with the arguments that Michel has raised.  Moreover, contrary to the government's argument, payments that merely "implicate" some business interest of the employer (Govt. Br. at 36) are not sufficient to establish bribery under post-*McDonnell* federal bribery law.  The payments must be intended to influence some concrete aspect of the employer's affairs.

## CONCLUSION

For the foregoing reasons and those set forth in his opening brief, defendant Michel respectfully requests that the indictment be dismissed.[4]

---

[4] Michel also joins in the arguments advanced by his co-defendant Chuck Person and incorporates by reference Person's memoranda of law in support of Person's motion to dismiss.

15

Dated: New York, New York
      July 27, 2018

                           COOLEY LLP

By:   */s/Jonathan Bach*
       Jonathan Bach
       Reed Smith
       Kaitland Kennelly

1114 Avenue of the Americas
New York, New York  10036
Phone:  (212) 479-6000

*Attorneys for Defendant Rashan Michel*