UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

| | |
|---|---|
| UNITED STATES OF AMERICA | **AGENT AFFIDAVIT** |
| - v. — | |
| CHUCK CONNORS PERSON, and RASHAN MICHEL, | 17 Cr. 683 (LAP) |
| Defendants. | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

STATE OF NEW YORK    )
                                      ) ss.
COUNTY OF NEW YORK  )

     Anthony Lupinacci, Special Agent, Federal Bureau of Investigation, deposes and states under penalty of perjury that the following is true and correct:

## I. Introduction

     1.     I am a Special Agent with the Federal Bureau of Investigation ("FBI" or "Investigating Agency"). As such, I am a "federal law enforcement officer" within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C) ("Rule 41"), that is, a government agent engaged in enforcing the criminal laws and duly authorized by the Attorney General to request a search warrant. I have been a special agent with the FBI since 2016. Through my work in law enforcement, I have participated in a variety of investigations into fraud and public corruption offenses. As a part of those investigations, and among other investigative steps, I have conducted or participated in the execution of search warrants, including searches of electronic media.

2.      This Affidavit is based upon my participation in the investigation of the above-captioned matter, including my examination of reports and records, my conversations with other law enforcement agents and other individuals, and my own training and experience.  Because this Affidavit is being submitted for a limited purpose, namely in response to a motion filed with respect to the search of certain cell phones recovered during the investigation, it does not include all the facts that I have learned during the course of this investigation.  Where the contents of conversations with others are reported herein, they are reported in substance and in part.  Similarly, actions, procedures, and search techniques described herein are described in summary fashion, and only in relevant part.

**II.     The Cell Phone Search Warrants**

3.      On November 3, 2017, the Honorable Barbara C. Moses, United States Magistrate Judge for the Southern District of New York, issued a warrant pursuant to Rule 41 for the search of an iPhone seized at the time of Chuck Connors Person's arrest on September 26, 2017 (the "Person Search Warrant" and "Person Cell Phone," respectively).

4.      On November 6, 2017, Magistrate Judge Moses issued a warrant pursuant to Rule 41 for the search of an iPhone seized at the time of Rashan Michel's arrest on September 26, 2017 (the "Michel Cell Phone," collectively with the Person Cell Phone, the "Cell Phones").

5.      While I was not the affiant on each application described above, in advance of the execution of the Search Warrants, I reviewed the Search Warrants, including any descriptions of the methods I and other law enforcement agents were to use to review the Cell Phones, as well as the attached riders which detail the materials the Search Warrants authorized law enforcement agents to seize.

### III.    Execution of the Search Warrants

6.      Since the Search Warrants were obtained, and as detailed further below, I and other law enforcement agents assigned to the investigation have executed them. I have personally been involved in the execution or attempted execution of each of those warrants, and what follows is based on my own participation, as well as my conversations with other law enforcement agents who have participated in the execution of the Search Warrants.

7.      In order to properly execute the Search Warrants, I and other law enforcement agents endeavored to extract copies of the contents of the Cell Phones. In this case, I am aware that law enforcement agents were only able to create such an extraction of the Person Cell Phone. With respect to the Michel Cell Phone, as it was password protected, law enforcement agents did not attempt to create such an extraction, and thus law enforcement agents have not been able to execute the search of the Michel Cell Phone.

### A. Search of the Person Cell Phone

8.      With respect to the Person Cell Phone, as noted above, law enforcement agents were able to extract a copy of the contents of the phone (the "Extracted Phone"). Law enforcement agents did so because I and other agents conducted our review of the extracted content, and not of the original Person Cell Phone. In order to create the extraction, I understand that law enforcement agents used a program known as "Cellebrite" which in turn, generates an extraction (a "Cellebrite Extraction") for the Extracted Phone. I and other agents then used the Cellebrite Extraction of the Extracted Phone to search for and identify material that is within the scope of the Person Search Warrant ("Identified Material").

9.      Based on my use of the Cellebrite program, including during and as a part of this investigation, I know that a Cellebrite Extraction automatically divides the content of a cell phone by category of data, such as "SMS Messages," "MMS Messages," "Chats," [1] "Emails," or "Voice Mail."   Moreover, within each such category of data, the Cellebrite program provides law enforcement agents a user-friendly interface to search a Cellebrite Extraction of a phone using common search terms and methodologies.  For example, using a Cellebrite Extraction, I and other law enforcements agents could search all "MMS Messages" on a cell phone for a particular name or phone number, or for key words such as "bribe" or "scheme" or "payment."

10.     As noted above, to search the Extracted Phone, I and other law enforcement agents – all of whom reviewed the Person Search Warrant and accompanying rider before participating in the searches – used the Cellebrite Extraction from the Extracted Phone, rather than reviewing the original phones.  In so doing, I and other law enforcement agents focused primarily on the areas of the Cellebrite Extraction that contained categories of data that we believed would be most likely to yield Identified Material.  In particular, I and other law enforcement agents focused on data categories such as MMS Messages,  SMS Messages, Chats, Contacts, and Voice Messages, all of which we believed were most likely to contain communications or related information regarding or in furtherance of the criminal scheme charged in the above-captioned case.  In reviewing those categories of data, I and other agents primarily used search terms, including the

---

[1] Based on my training and experience, I am aware that "SMS" refers to "short message services" or traditional text messages, which are capped at 160 characters and cannot include multimedia.  By contrast, "MMS" refers to multimedia-message-service or multimedia text messages that have no length limits and can include or "attach" various forms of multimedia, such as images and videos.  "Chats" refers to other forms of similar communication, such as the "iMessage" feature available to users of iPhones or WhatsApp communications for users of the WhatsApp application.

names and numbers of known scheme participants, to locate and review text communications that might be within the scope of the Person Search Warrant.   In certain instances, I and other agents reviewed SMS Messages on the Person Cell Phone without the use of search terms where we believed an individual review would be likely to yield Identified Material.

11.     While I understand that the terms of the Person Search Warrant permitted myself and other agents to conduct a "complete review" of all of the data on the Person Cell Phone, no such review was actually undertaken.   Instead, because the Cellebrite Extraction is able to sort the contents of the Extracted Phone into categories of data that are, in turn, searchable, as detailed above, I and other agents chose to focus our review on certain categories of data, like SMS Messages, MMS Messages, and Chats, that we believed were most likely to yield Identified Material.  By contrast, with respect to data categories such as "Log Entries," "Device Location," "Web Bookmarks," "Web History," "Call Log," and "Images," I and other law enforcement agents limited our review, consistent with what I understand to be the protocol identified in the Person Search Warrant, to a cursory review sufficient to satisfy ourselves that nothing in that category of data was likely to constitute Identified Material.   By way of example, with respect to "Web History," I opened that category of data on the Cellebrite Extraction to confirm that it, in fact, contained nothing but a listing of websites and related information.   Upon discovering that to be the case, I did not go further and, in particular, did not spend any time reviewing particular websites visited by the phone user, because I did not believe such a review would be likely to result in the identification of material within the scope of the Search Warrant.   Similarly, with respect to "Images," I opened that category of data to determine what kind of Images were stored on the Person Cell Phone – *i.e.*, photographs, documents, spreadsheets.   Based on my initial review, it

appeared that the Images category consisted primarily of photographs, and as a result, I did not go further, and, in particular, did not spend any time reviewing particular photographs, as I did not believe such a review would be likely to result in the identification of material within the scope of the Person Search Warrant.[2]

12.     At this time, I and other law enforcement agents have substantially completed our review of the Extracted Phone and our identification of material from the Person Cell Phone that we believe to be within the scope of the Person Search Warrant – *i.e.*, the Identified Material.  It is my understanding that this Identified Material consists almost exclusively of SMS messages and Chats between scheme participants, as well as some contact information.

Dated:  August 24, 2018
         New York, New York

                                        Anthony Lupinacci
                                        Special Agent
                                        Federal Bureau of Investigation

---

[2] With respect to images and related multimedia, and based on my review of Chats seized from the Extracted Phone, I know that the scheme participants, including Person, sent and received image files such as photographs, pdfs, jpegs, and other types of multimedia, to each other via one or more Chat functions.  As such, my review of Chats necessarily entailed, at times, a review of other forms of media attached to or "embedded" in those text conversations, some of which fell within the scope of the Person Search Warrant.