J1TsPERc

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

             v.                          17 CR 683(LAP)

CHUCK CONNORS PERSON and
RASHAN MICHEL,

                 Defendants.

------------------------------x

                                    New York, N.Y.
                                    January 29, 2019
                                    11:00 a.m.


Before:

                  HON. LORETTA A. PRESKA,

                                    District Judge


                       APPEARANCES

GEOFFREY S. BERMAN
     Interim United States Attorney for the
     Southern District of New York
ROBERT BOONE
ELI J. MARK
ALINE FLODR
     Assistant United States Attorneys

SHER TREMONTE LLP
     Attorneys for Defendant Person
BY:  THERESA M. TRZASKOMA
     MICHAEL W. GIBALDI
     EMMA S. SPIRO

SHAPIRO ARATO BACH LLP
     Attorneys for Defendant Michel
BY:  JONATHAN BACH

J1TsPERc

1          (Case called)

2          THE COURT:  United States v. Person.

3          Is the government ready

4          MR. BOONE:  Yes, your Honor.

5          Robert Boone for the government.  With me at counsel's

6     table is Eli Mark and Aline Flodr.

7          THE COURT:  Good morning.

8          Is defense ready.

9          MS. TRZASKOMA:  Yes, your Honor.

10          Theresa Trzaskoma from Sher Tremonte on behalf of

11     Mr. Person.  With me here today is Michael Gibaldi and Emma

12     Spiro.

13          Mr. Person waives his appearance at this.

14          THE COURT:  Yes, ma'am.

15          MR. BACH:  Good morning, your Honor.

16          Jonathan Bach on behalf of Mr. Michel, who waives his

17     appearance.

18          THE COURT:  Yes, sir.  Good morning.

19          Counsel, I guess the first item on the table is the

20     request for the bill of particulars.

21          I must admit that there seems to be an awful lot of

22     information disclosed in the complaint, the indictment, and the

23     discovery.  I am a bit at a loss as to why the defense feels

24     that they are entitled to a bill of particulars.

25          MR. BACH:  I'm happy to address that, your Honor.

J1TsPERc

1          THE COURT:  Yes, sir, Mr. Bach.

2          MR. BACH:  So there is a tremendous amount of material

3    produced in discovery in this case, and it is a lengthy talking

4    indictment.  The bill of particulars goes to --

5          THE COURT:  I'm going to ask you to keep your voice

6    up, if you would, Mr. Bach.

7          Let me give it a try.

8          (Pause)

9          Go ahead.

10          MR. BACH:  Thank you, your Honor.

11          There was a tremendous amount of material produced in

12    discovery, and it is a lengthy talking indictment.  There is no

13    question about that.  The bill of particulars goes to two very

14    broad almost generic terms.  The terms are business and

15    transaction.

16          What the defense wants to know is what does the

17    government consider, among this large volume of material, to be

18    the business or transaction that they intend to pursue in this

19    case.  Those terms have such a broad application, almost any

20    conduct could be described as transaction.

21          THE COURT:  The government wrote a letter, which you

22    pointed out in your papers, dated July 13, talking about "the

23    business of Auburn University, namely with respect to the

24    conduct of Auburn University's basketball program."

25          We know what the government thinks the business is.

J1TsPERc

1          MR. BACH:  I agree with your Honor.  We raised the

2     question whether that was the business or whether there would

3     be other business or other transactions.  The government

4     declined to answer that question in advance of our motion.

5          THE COURT:  The government doesn't have to tell you

6     every single transaction, does it?

7          MR. BACH:  If there are transactions that it contends

8     constitute the crimes, are essential facts of the crimes, it

9     has to tell us that either in an indictment or, failing that,

10    in a bill of particulars.

11          In this case, there was no to wit clause in the

12    indictment, as one might typically find, that defined the

13    transaction or the business at issue.  The government did

14    supplement with a letter which provided some information, but

15    declined to state that that is what it was limiting the

16    essential facts of this case to.

17          We're entitled to the essential facts of the charges

18    that we have to defend against.  Not the minutia of discovery,

19    not the minutia of evidentiary proof, this is partly one, but

20    the essential to wit, what are the businesses or transactions

21    that they are going to tell the jury constitute the crime.

22          THE COURT:  Tell me again why the letter isn't

23    sufficient on the business issue.

24          MR. BACH:  If the government is prepared to represent

25    to the court today that that is the business they intend to

J1TsPERc

base their case on, it suffices.

          THE COURT:  What about all those cases that say it is
not the job of the bill of particulars to limit the government
in the evidence it may present?

          MR. BACH:  Judge, we are not attempting to limit the
evidence they can present.  What we're asking for is a clear
statement of what the charges are.  What is the essential fact,
not the evidence that they will use to prove that fact.  But
what is the to wit, how do they define business or transaction
that this trial is going to be about.

          They have defined business in one way.  That they've
done, but they have declined to say that that is the only way
they plan to define it.  That is why we filed the motion.

          THE COURT:  All right.  Mr. Boone, Mr. Bach says that
the government is required to state that the business
identified in the letter dated July 13 is the only business
that the government intends to present proof on.

          MR. BOONE:  Yes, and that is incorrect, your Honor.

          As we noted in our brief, defendants don't cite to a
single case that says that.  They don't cite to a single case
in which the request they are seeking has been granted, and I
think it is because it is pretty clear black-letter law that
what your Honor suggested is correct, which is that the
government doesn't have an obligation to explain its theory and
limit itself when we're now, I think, maybe five months out of

J1TsPERc

1     trial as to what we can present at trial.

2             Also, just to circle back, what Mr. Bach has conceded

3     in his papers and again here today is that we have told them

4     what at least one of the business transactions is.  It has also

5     been the subject of briefing in this case, in particular, in

6     regards to the motion to dismiss, and that is that it is our

7     view that Auburn's mission was to run an NCAA compliant program

8     and that the paying of Mr. Person to essentially not run an

9     NCAA compliant program was a business of Auburn.

10            Then also, your Honor, just to add a little bit more

11    color to this, obviously the government will not sort of seek

12    to introduce anything that has not been already given in

13    discovery and the review of discovery makes it pretty clear

14    what the options are in terms of business or transactions.

15    Most of discovery involves wiretap communications involving

16    either Mr. Bach's client or Mr. Person himself.

17            In terms of the documents produced in discovery, those

18    documents relate to the athletic program at Auburn University,

19    things such as the contract of Person, certain certification

20    forms related to his NCAA eligibility.  It is not a terribly

21    difficult case in terms of there is lots of different tentacles

22    here.  I think it is pretty clear we are not referring to some

23    sort of merger or business, some sort of transaction involving

24    Auburn that hasn't been produced in discovery.

25            THE COURT:  Mr. Bach says, though, with respect to the

J1TsPERc

1    transactions, that he is entitled to know every transaction, he

2    is entitled to have the government spell out every transaction

3    that it will assert was unlawful.

4         MR. BOONE:  Again, your Honor, there is no case law to

5    support that.  That is just not what the case law says.

6         Obviously it would be helpful to the defense, and

7    there is case law that makes it clear, just because it is

8    helpful, doesn't mean defense gets it.  But there certainly is

9    no requirement that in every fraud case, the government must

10   lay out every potentially fraudulent transaction or transaction

11   that is going to be at issue in the trial.

12        THE COURT:  Mr. Bach, Mr. Boone says that anything the

13   government is going to rely on is included in the discovery

14   materials in any event.  You're not entitled to a specific

15   listing of everything.

16        Why is that wrong?

17        MR. BACH:  Well, it is wrong for two reasons, your

18   Honor.

19        Number one, there is so much in the discovery that

20   could be characterized as a transaction or as a business that

21   we don't have fair notice of what it is they are going to

22   assert.

23        THE COURT:  How can that be true?

24        I mean, if there is something in there where one of

25   the defendants is ordering coffee, nobody thinks that is in any

J1TsPERc

way related to the charges here.

       But there has been a general description of the
charges and several specific examples.  I don't understand why
that is not enough.

       MR. BACH:  Because, your Honor, the government has
told the court that it is not limiting itself to the general
description it just gave.

       THE COURT:  What do you rely on to say that the
government must set out every single transaction it might
assert was illegal?

       MR. BACH:  I rely on Rule 7, which by its plain terms
requires the charging document to state not just the elements
of the offense, but the essential facts.  That is Rule 7(c).
Rule 7(f), which is also --

       THE COURT:  That is different from every single fact
and every single detail, which is clearly not the law.

       MR. BACH:  Absolutely right, your Honor.

       I am not asking for every detail.  I am not asking for
every fact.  What I'm asking for is what the government
typically provides in its charging documents, a to wit clause.

       THE COURT:  That is not the test either.

       MR. BACH:  It is not the test, but I am trying in a
vernacular to explain, I am not asking for an exhaustive list
here.  I am not asking for evidentiary detail.  What I am
asking for is as in a drug case, there would be a to wit clause

J1TsPERc

1    that gave some particularization of what set of transactions or

2    what the neighborhood was or something very general.

3          THE COURT:   What the neighborhood is is very different

4    from every single transaction.   You've got more than what the

5    neighborhood is here and you certainly have got some

6    transactions.

7          MR. BACH:   Judge.

8          THE COURT:   Even in a drug case, the government

9    doesn't have to list every single transaction.

10         MR. BACH:   I'm not asking -- let me be clear.

11         THE COURT:   Yeah, you are.

12         MR. BACH:   Let me be clear.   If I miscommunicated, I

13   apologize.

14         I'm assuming that the government is either going to

15   limit its proof to the way it has also characterized the

16   business.   They are not saying they are, but I am assuming

17   there is a good chance they will do that.   If they don't, if

18   they go beyond that, my strong sense is the likelihood is that

19   they are only going to go beyond it with two or three or four

20   particular transactions that they'll seek to prove to the jury.

21   I want to know those.   I want to know the ones that --

22         THE COURT:   I know that would be helpful.   I don't see

23   that it is necessary.

24         MR. BACH:   Judge, we made our motion on the ground

25   that that would be an essential fact for the defense.

J1TsPERc

1          THE COURT:  Thank you.

2          Counsel, do you want to add anything?

3          MS. TRZASKOMA:  Not on this, your Honor.

4          THE COURT:  Yes, ma'am.

5          All right.  I find that the defense is not entitled to

6     a bill of particulars here.  The material in the very detailed

7     complaint, the material in the, if not speaking, shouting

8     superseding indictment, and the voluminous discovery here are

9     certainly sufficient for the defendants to prepare for trial,

10    to prevent surprise, and to interpose a plea of double

11    jeopardy, should the defendants be prosecuted a second time for

12    the same offense.

13          I also note the government's agreement that any

14    transactions that will be alleged to have been illegal have

15    been the subject of documentary discovery.  So that motion is

16    denied.

17          Counsel, with respect to the various motions to

18    suppress, I think some of it might have been covered in the

19    memorandum denying the motion to dismiss the indictment.

20          MS. TRZASKOMA:  Yes, your Honor.

21          I do believe that there were certain aspects of our

22    arguments that have been resolved as a result of your Honor's

23    decision on our motions to dismiss, but I believe that with

24    respect to both the wiretap motion and the motion to suppress,

25    there are certain of the cell phones, there are still remaining

J1TsPERc

issues.

THE COURT:  What would you like to be heard on?

MS. TRZASKOMA:  Your Honor, I would like to be heard
on both the wiretap issue and the search warrant issue.

THE COURT:  Yes, ma'am.  Go ahead.

MS. TRZASKOMA:  With respect to the wiretap issue, one
of our principal arguments is that a wiretap, under the
circumstances of this particular investigation, was entirely
unnecessary.  And the reason for that, as we have laid out in
our papers and I won't belabor the points here, but I do want
to make sure that the overall context is clear.

The government had a cooperating witness.  That
cooperating witness hatched this entire plan, devised the
elements of the plan, executed the plan, and was successful in
providing the government with all it needed to investigate the
offenses that have been alleged here.

THE COURT:  Passing the characterizations, what do you
say to the argument made in the government's brief that the
cooperating witness could only tape, if you will, conversations
in which he participated, and yet there were other
conversations, including between, for example, Mr. Person and
the parents, that there was no way the cooperating witness
would be able to hear those conversations?

MS. TRZASKOMA:  I have two responses to that,
your Honor.

J1TsPERc

1          The first is that theory of why you need wiretap is

2     nowhere articulated in the explanation in the wiretap

3     application.

4          The wiretap application makes very clear -- and it is

5     really the heart of what we're concerned about, which is on

6     page 55 of the first wiretap application -- the description of

7     why confidential informants and cooperating witnesses are

8     insufficient.  The government said we need the wiretap because

9     we need evidence of additional ventures, additional payments,

10    additional schemes.

11          The second issue is that at the time the government

12    applied for this wiretap, Mr. Person, according to the

13    application itself, had already set dates for the government's

14    cooperator to meet with a player and to meet with the family.

15    So to the extent they needed evidence of the steering, which

16    are the acts that are the quo here, they were getting that.

17          Mr. Blazer, the government's cooperator, was going to

18    meet, and did meet, directly with the players and with their

19    families.  Under those circumstances --

20          THE COURT:  I'm looking at page 56 at the bottom, a

21    cooperating witness, such as CW-1, who was only involved in one

22    aspect of the activities, in particular, the Person bribery

23    scheme, but does not have full visibility into all of Michel's

24    activities, is likely to have great difficulty obtaining

25    evidence about the full scope of Michel's payments to college

J1TsPERc

1    coaches and/or current college athletes.

2              MS. TRZASKOMA:  Well, Mr. Bach can respond to whether

3    that was sufficient for purposes of obtaining a wiretap on

4    Mr. Michel's phone, but as to Mr. Person, there was no evidence

5    anywhere that Mr. Person was involved in any scheme other than

6    the one that the government had cooked up.

7              And, in fact, at this point, all of the evidence,

8    including what is detailed in the wiretap application, is that

9    Mr. Person was not involved in any additional ventures,

10   additional payments, or additional schemes.

11             Mr. Michel presented Mr. Person to the government's

12   cooperator as someone who needed a loan.

13             THE COURT:  Counsel, may I impose on you for five

14   minutes?

15             MS. TRZASKOMA:  Yes, your Honor.

16             THE COURT:  Thank you.

17             (Recess)

18             THE COURT:  Counsel, thank you for your consideration.

19             You were telling me that, at the time in question,

20   there was no evidence that your client was involved in any

21   other scheme, is that right?

22             MS. TRZASKOMA:  That's correct, your Honor.

23             The scheme that was being led by the government's

24   cooperator was fully known to the cooperator through the

25   cooperator.  The cooperator --

J1TsPERc

1          THE COURT:  I don't think you can say fully known,

2     can you?

3          MS. TRZASKOMA:  I believe --

4          THE COURT:  We don't know who the parents were or any

5     of that.

6          MS. TRZASKOMA:  Mr. Person, according to the wiretap

7     application at the time, Mr. Person -- and this is on page 45

8     and 46 -- well, starting at 44 in the December 1, 2016

9     consensual telephone call -- Mr. Person informs the

10    government's cooperator that he had planned a meeting with a

11    particular player and had named other players.

12         Then on a December 2 call, Mr. Person again identified

13    the mother of a player and indicated that there had been a

14    meeting set up at Mr. Person's home on December 18.

15         So at the time of this wiretap application, your

16    Honor, the government, from soup to nuts, knows what this is

17    about and has access --

18         THE COURT:  But you can't use the word fully informed.

19         MS. TRZASKOMA:  Well, your Honor, what I would say

20    is that the wiretap application does not comply with the

21    requirements of Title III because it does not tell the

22    reviewing judge why exactly the cooperator is not sufficient.

23    I think it actually is inaccurate, because in the description

24    on pages 55 through 57 of why the cooperating witness is

25    insufficient with respect to Mr. Person, there is nothing in

J1TsPERc

1    there that says what the cooperating witness can't get.

2            THE COURT:  OK.  Mr. Boone, what could the cooperating

3    witness not get and where is it in the affidavit?

4            MR. BOONE:  Your Honor, what he could not get is

5    conversations that he is not part of.  If you look at the

6    objective of the wire, which is on page five, it lays out what

7    the point of the wire is, which includes identifying all

8    targets and subjects and accomplices involved in the

9    investigation, which are defendant obviously wouldn't be aware

10   of because he doesn't know who Michel knows and he doesn't know

11   necessarily who Mr. Person knows.

12           Your Honor, just to sort of take a step back, two

13   things.  One, obviously it is not the case that you can only

14   get a wire if you're looking to investigate crimes you don't

15   already know.  Obviously the wire is explaining the very

16   beginning stages of an investigation to correct what defense

17   counsel has said.  Mr. Michel came to the cooperator with this

18   opportunity.  He is the one who knows person.  The person

19   doesn't know who Chuck Person is.

20           If you read the affidavit, when they are initially

21   talking, he is not even sure who Michel is talking about.

22   Michel is the one who is informing him about a connection he

23   has to a basketball coach and how that coach has informed him

24   that he would be interested in taking money in exchange for

25   steering players.  It is very clear, I think, in the first

J1TsPERc

1      conversation they have.

2              Obviously this is not something that sort of is driven

3      by the cooperator.  He is controlling all aspects of it.  He is

4      receiving information from Michel about Person, and he

5      ultimately receives information about person regarding what

6      they want to do, what they want to be involved in.

7              But to sort of anchor us a little bit more, your

8      Honor, the law doesn't require that we lay out sort of

9      investigations we are not aware of and have that be the basis

10     for a wire.  In terms of necessity, as we've said in our brief

11     and looking at page five of our response to their motion, the

12     statute only requires that the agents inform the authorizing

13     judicial officer of the nature and progress of the

14     investigation and of the difficulties inherent in the use of

15     normal law enforcement methods.  That is it.

16             It doesn't require you explain who your cooperator can

17     talk to, who they can't talk to.  It requires us to explain

18     difficulties in normal methods and we have done that.  We made

19     it clear that we talked about over a dozen methods, including

20     the use of the cooperator and explained why that is difficult.

21             As your Honor pointed out, what we suggested was

22     correct because, in fact, there were conversations that

23     happened that were crucial to the scheme that our cooperator

24     was not a part of.  A large part of the proof that we will have

25     to show is that not only that Mr. Person take money, but that

J1TsPERc

1    he actually did something in exchange for that money.

2              The conversations he has had with the parents to

3    encourage them to retain the services of our cooperating

4    witness are crucial evidence.  That is the quo in the case.

5    He obviously is not going to be able to be party to every

6    conversation that Mr. Person is having with the parents, he

7    doesn't even know who they are, but what Mr. Person actually

8    wants them to do and what he is actually pushing them to do.

9    That is essentially what the case is about.

10             So yes, obviously Mr. Person can be there in the few

11   instances in which they meet, and there aren't very many

12   frankly in which they meet, between him and the parents.  He

13   can't be there when Mr. Person is really doing the groundwork

14   of what he has agreed to do, which is use his already existing

15   relationship with the parents to push them to the cooperating

16   witness.  So obviously that is a huge reason why this was

17   necessary.

18             Just briefly, your Honor, on the point that there was

19   no evidence of other investigations -- I'm sorry -- of other

20   schemes that were sort of afoot.  It is not true.  It is very

21   clear in the affidavit itself.  If you look, for instance --

22   I'll just go over a few of these.  If you look, for instance,

23   on page 22 of the agent's affidavit, Michel says -- Michel

24   basically infers that he has connections to what we call

25   coaches who may be interested in participating in a similar

J1TsPERc

scheme.  He says, The good thing about it is, I've got all the

college coaches right now because, guess what, I'm the one that

is with them.  I make all their suits.

He talks about having access to the locker room,

access to the kid and everything.  He talks about the money

that is in basketball and how he can get ten players.  He

basically is good financially for the next five years and

doesn't have to do anything.

Similar conversations continue.  If you look on page

26, here Michel is essentially discussing with CW-1 that if he

doesn't want to go forward with Person, it is fine.  They can

go in a different direction.  He says, If you can't do it, just

tell me.  I can go in a different direction.  We will still be

able to get the players.  Obviously he is talking about the

scheme.

And Mr. Person himself discusses his interest in

expanding the scheme.  If you look on page 49 of the agent

affidavit, Mr. Person is talking with the cooperator, and he is

talking about how he would like to continue this in the future.

He says, If I can supplement myself and be able to stay at

Auburn and make it work, then I could stay and not go looking

somewhere else.  We explained that he had been considering

leaving the program.  Here, he is talking about expanding their

scheme so that, in years to come, he can supplement his income

in a way that will make it sort of worth his while financially.

J1TsPERc

1          So, again, your Honor, just at the risk of belaboring

2     the point, this is the first wire of many wires.  This the

3     beginning of the investigation.  This isn't the last wire.

4     Obviously, at this point, a lot of things haven't happened,

5     like I pointed out in our brief.

6          Mr. Persons only got a portion of the money that he

7     asked for.  None of the meetings have happened with the

8     parents.  So the need for the wire to both understand the

9     extent of the conspiracy, the potential coconspirators,

10    potential other schemes, this is evident.

11         THE COURT:  All right.  Counsel, what do you say to

12    that?

13         MS. TRZASKOMA:  Well, your Honor, I think what I say

14    to most of that is that that may be true that there are

15    indications in the wiretap application that Mr. Michel was

16    involved and had other potential schemes afoot, but I do not

17    believe there is anything, including what is on page 49, that

18    indicates that there were additional ventures and additional

19    schemes as the government suggests.

20         What Mr. Person was saying on page 49 to the

21    cooperating witness is that maybe that he would continue doing

22    this with the cooperating witness, which, again, proves that

23    the government has -- by having access to Mr. Person through

24    its cooperating witness, it has no need for a truly invasive

25    wiretap, where the government is going to obtain and listen to

J1TsPERc

1    every single phone call, including Mr. Person's most intimate

2    communications.  That is really the heart of Title III, which

3    is that it is allowed only when it is necessary.  That is what

4    the law says.

5           So the question is, would it be helpful, would it give

6    the government more information.  That's not meeting the

7    necessity requirement.

8           THE COURT:  Well, all right.  I got it.  Thank you.

9           MS. TRZASKOMA:  Thank you, your Honor.

10          On the search warrant, I don't know if your Honor --

11          THE COURT:  Let me just say, with respect to this

12    initial wiretap application, the fact that the names of some of

13    the players or some of the parents were volunteered to the

14    cooperator in no way diminishes the need to have a wiretap on

15    the phones in order to identify other participants in the

16    scheme and, more importantly, what the participants propose to

17    do; the steering of the players, the steering of the parents.

18    There is absolutely no way that could be done.

19          MS. TRZASKOMA:  Your Honor, I beg to differ with that.

20    Basketball has a very limited number of players, and the

21    players who have the potential to go play in the NBA is an even

22    smaller number.  So at any given time, and in this particular

23    season, Mr. Person had two or three players, and he identified

24    all of them to the cooperating witness.

25          THE COURT:  That doesn't help with the problem of

J1TsPERc

```
 1   figuring out what he said to them or what he said to the

 2   parents in an effort to steer them to the preferred vendors.

 3            MS. TRZASKOMA:  Your Honor, I would just go back to

 4   the question of necessity, and title --

 5            THE COURT:  It is not the law that the agents have to

 6   exhaust every single investigative technique before asking for

 7   a wiretap.

 8            MS. TRZASKOMA:  Your Honor --

 9            THE COURT:  Excuse me for interrupting you.

10            MS. TRZASKOMA:  Yes.

11            THE COURT:  But it is wholly foreseeable that after

12   observing what was going on, that the details of the scheme

13   would be disclosed in the phone conversations and texts between

14   and among these participants.  That is all that is required.

15            MS. TRZASKOMA:  Your Honor, I would just go back to

16   the Lilla decision, which is a Second Circuit case, that if it

17   has any application, it applies in these circumstances.  That

18   was a case where there was an Upstate state trooper who learned

19   that a particular defendant was selling drugs.  He went and

20   purchased drugs and heard from the defendant that there were

21   more drugs coming, and he sought a wiretap application.

22            The court basically said what I am saying here, which

23   is you have regular investigative techniques.  They are

24   successful, as they were in this case, and under those

25   circumstances, you don't need a wiretap.
```

J1TsPERc

1          THE COURT:  I disagree.  The <u>Lilla</u> case, 699 F.2d 99

2     (2d Cir. 1983) is nothing like this case.  That was a narcotics

3     case.  It wasn't even a particularly complicated one.  Indeed,

4     I think the court characterized it as a "small-time narcotics

5     case."

6          That is nothing like the scheme that is alleged and

7     the scheme that was being investigated here where, among other

8     things, it was necessary to find out what the participants were

9     saying to the parents, as counsel noted, the quid pro quo.

10    They are wholly different types of cases, and the <u>Lilla</u> case is

11    in no way comparable to this.

12         MS. TRZASKOMA:  We obviously disagree with that, your

13    Honor.

14         THE COURT:  I find that within the four corners of the

15    law, the initial wiretap application was more than sufficient

16    to justify the entry of the wiretap.

17         Certainly there was sufficient information there to

18    indicate that these individuals were committing or about to

19    commit an offense that particular communications concerning the

20    offense both in terms of identifying participants and figuring

21    out what the participants were saying to the parents and the

22    students would be found through the wiretap, and certainly we

23    knew already that the phones were being used in connection with

24    the offense.

25         That portion of the motion is denied.

J1TsPERc

```
 1          MS. TRZASKOMA:  Your Honor, the second part of our
 2    motion is with respect to the search warrants for the phones
 3    and, in particular, Mr. Person's phone.
 4          THE COURT:  After they were --
 5          MS. TRZASKOMA:  After they were arrested and the
 6    complaint.
 7          THE COURT:  Let me just add, by the way, if I fight
 8    that, in any event, the good faith exception applies here.
 9    There is no reason the agents would not see and would not
10    understand that they were relying in good faith on the order.
11    I don't think that defendants have made any arguments that the
12    agents made any dishonest or reckless statements in their
13    affidavits or otherwise that the FBI's reliance on the wiretap
14    orders was unreasonable.
15          MS. TRZASKOMA:  Your Honor.
16          THE COURT:  Going on to counsel's motion to suppress
17    the evidence obtained from the cell phones post arrest.
18          MS. TRZASKOMA:  Your Honor, just for the record, I
19    want to preserve that we disagree that the good faith exception
20    applies on the Title III, which is in our papers.
21          THE COURT:  Yes, ma'am.
22          MS. TRZASKOMA:  With respect to the search warrant,
23    our argument is facial invalidity, search warrants, that the
24    search warrants on their face authorized the search of the
25    entire contents of Mr. Person's cell phone, even though the
```

J1TsPERc

government had no reason to believe that anything other than
the text message applications and the e-mail applications would
have evidence of any potential offense.

There we are particularly relying on the <u>Riley</u>
decision, your Honor, by the Supreme Court, which makes clear
that modern-day smartphones -- of which this was one, it was an
iPhone -- it had, again, every intimate detail of Mr. Person's
life, it had photographs, it had web-browsing history, the
kinds of very intimate details that the Supreme Court was
concerned about in <u>Riley</u>.

The face of the search warrant makes clear that the
government could look at his entire phone, even though it had
no reason to believe that any relevant information would be
found in anything other than the e-mail or text message
applications.

Indeed, the affidavit that the government has provided
to the court in opposition to our motion makes very clear that
the government did, in fact, look at web-browsing history,
photographs, and other information that was not connected,
potentially connected to the crime.

Our argument is that, on its face, it is a general
warrant and it was improper.

THE COURT:  Mr. Boone, counsel says that the warrant
was overbroad and the request was overbroad.

MR. MARK:  Your Honor --

J1TsPERc

1          THE COURT:  I'm sorry, Mr. Mark.

2          MR. MARK:  Thank you, your Honor.

3          Just very briefly, the request here is really quite

4    staggering that they have argued that there is no probable

5    cause here for a search warrant of two phones that were

6    actually the subject of the wiretap investigation here.  A

7    wiretap where some of those calls, some of those text messages

8    are detailed specifically in the complaint that is attached to

9    that that they had incorporated therein.

10          The suggestion that this is somehow overbroad and

11   facially so also is quite staggering because of just the mere

12   reference to the search warrant itself.  It details that it

13   meets all three particular requirements.  It details the

14   subject offenses.  It details what is to be searched.  Here,

15   the specific cell phones that were the subject of the wiretap,

16   and third, the types of evidence that they could then collect

17   from that search warrant.

18          So it did not essentially allow them just to search

19   and go through anything.  It was that they could search that

20   phone in order to look for specific evidence of the crime.

21   That is all that is required under the Fourth Amendment and

22   that is all that is required under Second Circuit precedent,

23   specifically citing to the United States v.  Ulbricht case,

24   which details that you can search the entire electronic device.

25   There it was a laptop.  Same thing with a cell phone, as Judge

J1TsPERc

1   Kaplan recognized in <u>Gatto</u>, in order to look for the particular

2   information there.

3           Moreover, I would just note that their suggestion that

4   there was no probable cause to think that there would be

5   anything other than, lets say, evidence of calls and text

6   messages just belies all the common inferences in everyday

7   knowledge that every agent knows and every judge knows, is

8   that if you're communicating with one person about a specific

9   matter -- here we're actually talking about a bribery scheme --

10  you might e-mail with them, text message with them, you might

11  look up stuff on the Internet about, you know, a player or a

12  person or do some research about that.  You might make notes

13  about that on your phone.  We do use these phones in all

14  different ways.  Everybody knows that, and there clearly was

15  probable cause for the judge to find that and for the agent to

16  believe that.

17          For all those reasons, we think these warrants were

18  obviously supported and that the agents who operated here in

19  reliance on them did so in good faith.

20          Thank you.

21          THE COURT:  Yes, counsel.

22          Anything to add?

23          MS. TRZASKOMA:  Only, your Honor, that on their face,

24  these warrants allow the government to look, to the extent they

25  are particularized and describe categories of information to

J1TsPERc

1    look for, that particularization is completely undermined by

2    the authorization to look everywhere.

3            In particular, paragraph 17 says, Depending on the

4    circumstances, law enforcement may need to conduct a complete

5    review of all the ESI from the subject device to locate all

6    data responsive to the warrant.

7            That couldn't be broader.  That is literally saying

8    you can look in every nook and cranny of this person's entire

9    life without limitation.  The fact that cell phones are now so

10   smart and contain so much information is reason why search

11   warrants like this don't meet the probable cause standard.

12           THE COURT:  All right.  Thank you.

13           I disagree.  First of all, Judge Forrest's opinion in

14   the <u>Ulbricht</u> case says otherwise.  But secondly, in this case,

15   the agents had specific information relating to phone calls,

16   texts, e-mails.  And as counsel for the government points out,

17   there is no reason to believe that there wouldn't be other

18   types of information on the phone, whether it was looking up a

19   player, whether it was any kind of address, for example, of the

20   parents or the player.  There is absolutely no reason to

21   believe that that wouldn't be the case.

22           Accordingly, I find that the affidavit in fact

23   established probable cause for the search.  In addition to

24   that, the agents certainly were acting in good faith, and there

25   has been no suggestion otherwise.  Accordingly, the motions are

J1TsPERc

1    denied.

2              What else do we want to do today, friends?

3              Mr. Bach?

4              MR. BACH:  Thank you, Judge.

5              I think the only remaining issue goes to scheduling.

6    We're happy to meet and confer with the government about 3500

7    material, motions in limine, that are productive before we

8    waste the court's time.

9              There is one issue I just want to flag --

10             THE COURT:  Yes, sir.

11             MR. BACH:  -- and come back to.

12             That is with respect to the schedule for drafting jury

13   instructions, which involves the court.

14             My strong suggestion here, your Honor, and I will

15   style it as a motion or application, is to have the jury

16   instructions for the substantive counts of federal services

17   bribery 666 and under services fraud to have those jury

18   instructions set forth a month or even more before the trial

19   begins.

20             I know that is not the usual sequence in these cases.

21   Usually the parties submit jury instructions and then the court

22   reviews them and --

23             THE COURT:  We're not doing that anyway.  What we are

24   going to do is that the government will send its draft

25   substantive charges to you, you will review them, and then you

J1TsPERc

| | |
|---|---|
| 1 | will send me your additions, subtractions, modifications, and |
| 2 | the like.  I'm not proofreading two sets of instructions. |
| 3 | The only question then is when.  When you folks |
| 4 | confer, you let me know if you disagree. |
| 5 | MR. BACH:  I will, Judge. |
| 6 | Just to be clear on the record, this goes back to the |
| 7 | points, I won't belabor them about, our concern about the |
| 8 | vagueness of terms such as business and transaction, what some |
| 9 | have seen of the vagueness on the services fraud statute and a |
| 10 | suggestion in the government's brief that there are now |
| 11 | constructions, such as the Supreme Court found in McDonald, to |
| 12 | deal with some of these issues.  I just think it is in |
| 13 | everyone's interest if we can deal with those sooner than |
| 14 | later. |
| 15 | THE COURT:  But it doesn't have to be tomorrow. |
| 16 | MR. BACH:  No, it doesn't, your Honor. |
| 17 | THE COURT:  Do we anticipate any motions in limine, |
| 18 | friends, or do we know? |
| 19 | MS. TRZASKOMA:  We do anticipate some motions in |
| 20 | limine.  I don't know that we can articulate all of them. |
| 21 | THE COURT:  Be sure, please, when you confer that you |
| 22 | put together a schedule for that as well. |
| 23 | MS. TRZASKOMA:  Yes, your Honor.  We will. |
| 24 | THE COURT:  What else? |
| 25 | MS. TRZASKOMA:  Nothing further from us, your Honor. |

1              MR. BOONE:  Nothing for the government, your Honor.

2              It is our understanding that time has been excluded

3    until the trial date.

4              THE COURT:  Yes, sir.  That is my understanding as

5    well.

6              Is there any disagreement on that?

7              MS. TRZASKOMA:  No, your Honor.

8              MR. BACH:  No, your Honor.

9              THE COURT:  Thank you, ma'am.  Yes, sir.  Thank you.

10             Thank you, counsel.  Good afternoon.

11             (Adjourned)

12

13

14

15

16

17

18

19

20

21

22

23

24

25